IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

ANDREA LYNN LEWIS GUNTER,
EXECUTOR OF THE ESTATE OF
JAMES C. LEWIS, JR., DECEASED,

    Plaintiff,

vs.    Case No.:

NEW PENN FINANCIAL, LLC d/b/a
SHELLPOINT MORTGAGE,

    Defendant.

## COMPLAINT

**NOW COME** the Plaintiff Andrea Lynn Lewis Gunter, Executor of the Estate of James C. Lewis, Jr., Deceased, and as his Complaint against the above-described Defendant, states as follows:

### PRELIMINARY STATEMENT

This action arises from the servicing of Plaintiff's mortgage loan by New Penn Financial, LLC d/b/a Shellpoint Mortgage ("Shellpoint"). Specifically, Plaintiff alleges that Shellpoint has wrongfully attempted to collect discharged debt and debt that is not owed, has wrongfully held Plaintiff in default post-discharge and has wrongfully returned payments and repeatedly threatened foreclosure. Shellpoint has violated the Real Estate Settlement and Procedures Act, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), which requires it to investigate and correct servicing errors after receiving written notice of same by Plaintiff. Plaintiff also assert claims for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. 1692 ("FDCPA"), and for violation of the bankruptcy discharge.

### JURISDICTION AND VENUE

1. This Court has jurisdiction of this case pursuant to 28 U.S.C.§§ 1332 and 1333 15

U.S.C. § 1640, 15 U.S.C. 1692k and 12 U.S.C. § 2617.

## PARTIES

2.     Plaintiff Andrea Lynn Lewis Gunter is an adult resident of Baldwin County, Alabama. She is the appointed executor and personal representative of the Estate of James C. Lewis, Jr., Deceased, which estate is pending in the Probate Court of Choctaw County.

3.     Defendant New Penn Financial, LLC d/b/a Shellpoint Mortgage, is a limited liability company with its principal place of business in Pennsylvania. This Defendant is referred to herein as "Shellpoint".

## FACTS

4.     On or about June 20, 2005, James C. Lewis, Jr., entered into a residential mortgage loan with HomeSouth Mortgage Services, Inc. The loan was secured by his home located at 2839 Wimberly Road, Torey, Alabama 36921 (the "Property"). The original loan amount was $84,000.00. The interest rate is fixed at 6.5% and the term is 15 years. Monthly principal and interest payments are $731.73. At the time of the loan, James Lewis and Melba Lewis were married and the Property was the couple's homestead. Although Mrs. Lewis is not listed as "borrower" in the mortgage, she did sign the mortgage. Mr. Lewis is the only signatory on the promissory note.

5.     At some point after the loan was closed, JP Morgan Chase Bank, N.A. ("Chase") became the servicer of the loan. By the beginning of 2013, Chase had begun returning regular monthly payments made by the Lewises and Chase placed the loan in foreclosure.

6.     In order to avoid the foreclosure, James and Melba Lewis filed a Chapter 13 bankruptcy in the Southern District of Alabama on February 25, 2013. At that time, the loan was considered by the creditor to be in default.

7.      On June 10, 2013, Chase the filed a proof of claim for $5,381.72, representing the total pre-petition arrearage Chase claimed was owed. On July 2, 2013, Lewis objected to Chase's claim. On August 8, 2013, that objection was sustained by the bankruptcy court and the arrearage claim was disallowed in full.

8.      James C. Lewis, Jr., died on April 8, 2013. He left a will designating Andrea Lynn Lewis Gunter, Mr. Lewis's daughter, as executor. An estate was opened in Choctaw County Probate Court and on July 2, 2014 Letters Testamentary were issued to Lynn Gunter, as executor of Mr. Lewis' estate.

9.      The Lewis' bankruptcy case was discharged on April 8, 2016.

10.     Upon information and belief, at some point during the bankruptcy, servicing of the loan transferred to defendant Shellpoint. However, Shellpoint failed to provide the notice of a servicing transfer as required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e).

11.     At all times after the servicing rights were acquired by Shellpoint, Shellpoint serviced the mortgage on behalf of a separate entity which claims to be the owner of the mortgage loan and the creditor. Throughout the servicing of the loan, Shellpoint collected or sought to collect sums owed under the mortgage loan to the creditor on the creditor's behalf. At the time Shellpoint obtained the servicing rights of the loan, the loan was considered in default by the creditor.

12.     Shellpoint's principal business is mortgage servicing. As a mortgage servicer, Shellpoint regularly collects or attempts to collect mortgage debts owed or asserted to be owed to another. Shellpoint services mortgages on behalf of an "investor" who is the entity that claims to own the mortgage loan and is the creditor. Shellpoint collects sums owed to the creditor under the

mortgage loan, acting on the creditor's behalf.

13. By letter dated July 8, 2016, Chase returned the regular monthly payment which was made for the June, 2016 payment. Chase's stated reason for return was that servicing had been transferred to Shellpoint. However, because the required notice was not provided to the borrowers, payment was directed to Chase.

14. On July 19, 2016, Shellpoint sent Plaintiff a statement demanding lump sum payment of past due amount of $26,705.44. This amount includes amounts which are not legally owed, including amounts which were discharged in the bankruptcy and amounts which were included in the arrearage claim filed by Chase which was denied by the bankruptcy court.

15. On August 19, 2016, Shellpoint issued a regular monthly statement which demanded lump sum past due amount of $27,620.61.

16. On August 25, 2016, Plaintiff mailed a check to Shellpoint in the amount of $2,362.10. This comprises the monthly payments for April through August, 2016, which were mailed to Chase. By letter dated August 31, 2016, Shellpoint returned the $2,362.10 check un-negotiated. The reason stated for the return was that the loan is more than 90 days past due. No explanation was given as to why Shellpoint is attempting to collect over $27,000.00 in mortgage arrearage.

17. On August 26, 2016, Plaintiff sent a letter explaining that they are not in default and requesting that Shellpoint properly apply their payments. The letter properly identified the loan and borrower and described the servicing errors the Plaintiff believed occurred. Here is the text of the letter:

> We are writing because we believe that errors have been made in the servicing of this account. Specifically, we believe payments have been wrongfully rejected and you are claiming amounts owed

under this mortgage which are not due. Also, we were not properly notified of the transfer of the servicing of the above-referenced mortgage loan to your company.

This mortgage loan originated with HomeSouth Mortgage Services, Inc., on June 20, 2005. This is a mortgage loan on the home of James C. Lewis, Jr. and Melba Lewis. James and Melba both signed the mortgage, but James was the sole signatory on the promissory note. James C. Lewis, Jr. died on April 8, 2013. (A copy of his Death Certificate is attached for your records, although this was previously sent to Shellpoint). He died with a will and that will was probated in Choctaw County, Alabama (Case No. A-2014-4752). Andrea Lynn Lewis Gunter is the testatrix named in the will and Letters Testamentary were issued by Choctaw County Probate Court to Mrs. Gunter on July 2, 2014. (A copy of the Letter Testamentary, is attached hereto). Please update your records so that Mrs. Gunter, as representative of Mr. Lewis' estate, may obtain information and communicate with you regarding this loan.

One of the errors we believe you have made is the attempted collection of arrearage which has been discharged in bankruptcy. As you know, Mr. and Mrs. Lewis filed a Chapter 13 bankruptcy in the Southern District of Alabama. The case was filed in February 2013, Case No. 13-00611. At that time, the loan servicer was Shellpoint Mortgage. Shellpoint filed a claim for past-due arrearage in the amount of $5,381.72 on April 2, 2013. On July 2, 2013, the Lewises' bankruptcy attorney filed an objection to the arrearage claim. That objection was sustained and the claim was reduced to zero. (See attached Order). The Lewises' bankruptcy was discharged on April 8, 2016. (See attached Discharge Order).

We recently received an account statement from you dated August 1 which demanded payment of more than $28,000.00 in past due amounts. We believe this demand includes discharged arrearage. Moreover, as explained below, we received no notice that servicing was transferred to you and were not informed of where to send the post-transfer payments. We have been unable to get information from you because your agents refuse to talk to us about the loan.

During the bankruptcy, payments were made each month to Shellpoint. In July 2016 Shellpoint began returning payments, claiming it was no longer the servicer on the mortgage. Eventually, Shellpoint returned payments made for April 2016 through August 2016. We received no transfer letter or other notice from either you or Shellpoint that the servicing had been transferred and, therefore, continued to send payments to Shellpoint. On August 24th, a payment in the amount of $2,362.10 was sent to you. This represents the payments returned by Shellpoint (April 2016 through August 2016). Please apply these funds. Also, we would expect any late fees to be waived because we tendered the payments on time and the only reason they were not applied was because of the failure to notify us of the servicing transfer.

With the application of the $2,362.10 payment, the loan is current. Please be sure to update your records accordingly and do not send any further demands seeking to collect discharged debt.

In addition to correction of the errors outlined above, please provide the following information:

1. The address for accepting payments on this loan;

2. If you contend that the loan is still in arrears, state the amount of the claimed arrearage and identify each month you claim payment was not received;

3. If you contend that you sent a welcome letter or other notice regarding transfer of the loan, provide a copy of that letter or notice and state the date it was mailed and the addressee;

    4. Identify the entity which holds the loan; and

    5. Provide a current pay-off statement, including a detailed breakdown of the pay-off amount.

18. This letter constitutes a Qualified Written Request ("QWR") and Notice of Servicing Error ("NOE") for purposes of Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

19. Plaintiff's NOE was sent, via certified mail, to the address designated by Shellpoint for receipt of QWRs and NOEs.

20. Shellpoint failed to provide a response to the Plaintiff's NOE as required under RESPA Section 2605(e) and 12 C.F.R. § 1024.35. Specifically, Shellpoint failed to conduct a reasonable investigation, failed to make the corrections that any reasonable investigation would have revealed were appropriate and failed to provide any information regarding the NOE. Moreover, Shellpoint failed to provide the information required by 12 C.F.R. § 1024.35(e)(B).

21. Shellpoint has continued to send notices falsely claiming that the Plaintiff is in default and has returned mortgage payments tendered by Plaintiff.

## COUNT I
### (VIOLATIONS OF BANKRUPTCY DISCHARGE)

22. The allegations of this Complaint are hereby re-alleged and incorporated by reference.

23. Defendant has attempted to collect mortgage arrearage and other fees in which were claimed in bankruptcy court and determined not owed. Any claim for pre-petition arrearage has been discharged. Shellpoint's attempts to collect such debt constitute willful violations of the discharge injunction in violation of 11 U.S.C. § 524.

**WHEREFORE**, Plaintiff respectfully requests entry of judgment in Plaintiff's favor against Shellpoint awarding the following relief:

a. Find that Defendant is in contempt of Court for violating 11 U.S.C. § 524;

b. Award Plaintiff damages, costs, and attorney's fees; and

c. Such other and further relief as the Court may deem just and proper.

## COUNT II
## (VIOLATIONS OF RESPA)

24. The allegations stated in all of the above paragraphs are incorporated as if fully asserted herein.

25. Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), grants borrowers the right to submit a "qualified written request" ("QWR") to the loan servicer requesting information and documents pertaining to the servicing of her loan. That provision and its implementing regulations also grant borrowers the right to submit a "notice of servicing error" ("NOE"), identifying perceived errors committed by the servicer. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

26. A QWR and NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

27. RESPA requires specific actions be taken by the servicer upon receipt of an NOE. The servicer must acknowledge receipt of the NOE within 5 business days. 12 U.S.C. § 2605(e)(1). Within thirty (30) days the servicer must take the following action:

-Make "appropriate corrections in the account of the borrower," and provide the borrower a written notification of such correction;

> -If, after conducting an investigation, the servicer determines that no error occurred, provide the borrower with a written explanation stating the reasons for which the servicer's determination and contact information of the individual or office that cn provide assistance;
>
> -If, after conducting an investigation, the servicer determines that the information requested is not available, provide a written explanation of the reasons for that determination and contact information of the individual or office that can provide assistance;

12 U.S.C. § 2605(e)(2)(A)-(C).

28. Recognizing the prevalence of servicing errors and the damage they can cause American families if not corrected, the federal Consumer Finance Protection Bureau in 2013 promulgated amendment to the RESPA implementing regulations (Reg. X.), which clarified the servicer's obligation to respond to a NOE. 12 C.F.R. § 1024.35. These new regulations became effective January 10, 2014.

29. The 2013 Amendments to Reg. X. clarify that the servicer has two options in responding to an NOE. The servicer must either (A) correct the error identified by the borrower, or (B) after "[c]onducting a reasonable investigation" provide "the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance." 12 C.F.R. § 1024.35(e)(A)&(B).

30. In addition to these requirements, the 2010 amendments to RESPA added additional "servicer prohibitions." 12 U.S.C. § 2605(k). Under these prohibitions, a servicer may not:

> -Fail to take timely action to respond to a borrower's notice of servicing error relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties. 12 U.S.C. § 2605(k)(C);

-Fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C.A. § 2605(k)

31. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

32. Defendant Shellpoint is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

33. Plaintiff's August 26, 2016 letter constitutes a "qualified written request" ("QWR") and a "notice of servicing error" ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

34. Shellpoint has violated 12 U.S.C. § 2605(e) by failing to respond to Plaintiff's QWR and NOE as required under that section and Reg. X. Specifically, Shellpoint failed to conduct any reasonable investigation of the errors described in Plaintiff's letter and failed to make appropriate corrections to the account. This is a violation of Section 2605(e) and its implementing regulations.

35. Shellpoint has also violated 12 U.S.C. § 2605(k) by failing to correct the errors identified in the Plaintiff's NOE and by failing to comply with the requirements set out in Reg. X regarding responding to a QWR and a NOE.

36. Shellpoint was required to provide written notice to Plaintiff of the transfer of the servicing rights with respect to the loan no less than 15 days before the effective date of the transfer. 12 U.S.C. § 2605(c). Moreover, RESPA prohibits a servicer from treating as past due any payment made to the previous servicer within the 60-day period following the effective date of the transfer. Shellpoint violated these provisions when it failed to provide any notice of the mortgage transfer and

when it treated as delinquent (and rejected) payments which were initially directed to Chase.

37. Plaintiff has suffered actual damages as a proximate result of Shellpoint's RESPA violations.

38. Plaintiff has suffered actual damages as a proximate result of Shellpoint's failure to comply with RESPA, including mental anguish and emotional distress. Plaintiff's actual damages also include fees, interest and other charges incurred as a result of Shellpoint's false belief that Plaintiff is in default; loss of equity as a result of Shellpoint's failure to properly apply payments; and costs incurred in sending the September 4, 2014 letter which, because of Shellpoint's failure to correct its servicing error, were for naught.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Shellpoint for each violation of RESPA, awarding the following relief:

A. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

B. Reasonable attorney's fees, and costs expended in this proceeding; and

C. Such other and further relief as the Court may deem just and proper.

## COUNT III
### (FDCPA VIOLATIONS)

39. Plaintiff realleges and incorporates each of the preceding paragraphs as if fully set out herein.

40. This is a claim against Defendant Shellpoint for multiple violations of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 ("FDCPA").

41.     Defendant Shellpoint is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Shellpoint has attempted to collect a debt which is owed to another and/or it obtained the debt and servicing rights after default.

42.     The alleged debt which Shellpoint attempted to collect from Plaintiff is a "debt" as defined by the FDCPA, 15 U.S.C. § 1692a(5).

43.     Defendant has violated the FDCPA in connection with its collection attempts against Plaintiff. Defendant's violations include, but are not limited to, the following:

    A.  Attempting to collect amounts which are not authorized by any contract or permitted by law. This is a violation of 15 U.S.C. § 1692f(1); and

    B.  Attempting to collect a debt by use of false, deceptive and/or misleading statements aimed at coercing the Plaintiff to pay the debt in violation of 15 U.S.C. § 1692e; and

44.     The actions taken by Shellpoint in violation of the FDCPA occurred within one year of the filing prior to this action.

45.     As a proximate result of Shellpoint's FDCPA violations, Plaintiff has suffered actual damages.

46.     As a result of its violations of the FDCPA, Defendant is liable to Plaintiff for compensatory damages, statutory damages, costs and attorneys fee.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant Shellpoint for the following:

    A.  Actual damages;

    B.  Statutory damages pursuant to 15 U.S.C. 1692k;

    C.  Costs and reasonable attorneys fees pursuant to 15 U.S.C. § 1692k;

D.    Such other and further relief as this Court deems just and proper, the premises considered.

**TRIAL BY JURY IS HEREBY REQUESTED AS TO ALL CLAIMS AND DEFENSES ASSERTED HEREIN.**

_____
KENNETH J. RIEMER (RIEMK8712)
Attorney for Plaintiff
Underwood & Riemer, P.C.
166 Government Street, Suite 100
Mobile, Alabama 36602
Telephone: 251.432.9212
Email: kjr@alaconsumerlaw.com

**DEFENDANT TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

New Penn Financial, LLC
c/o CSC - Lawyers Incorporating Srvc Inc
150 South Perry Street
Montgomery, Alabama 36104